COOK FARM CO. *v.* CITY OF DETROIT.[1]

LOCAL TAXATION—MUNICIPAL BOARDS—CONSTITUTIONAL LAW
> A statute is unconstitutional which attempts to confer on a previously-appointed city water board the power, not theretofore possessed by it, of imposing on abutting property the cost of laying water mains in the streets, whether such power is to be exercised directly, or only indirectly, by requiring the common council to make the assessment in conformity with a report of the board.

Appeal from Wayne; Waite, J. Submitted April 12, 1900. Decided June 5, 1900.

Bill by the Cook Farm Company, Limited, and others, against the city of Detroit and Thomas M. Lucking, receiver of taxes, to restrain the collection of an assessment for the laying of a water main. From a decree for complainants, defendants appeal. Affirmed.

*Walker & Spalding*, for complainants.

*C. D. Joslyn*, for defendants.

HOOKER, J. In 1897 the legislature passed an act amendatory of the Detroit water-board act, designed to provide for defraying the expense of the extension of water mains, including street intersections, by assessment upon the private property (*i. e.*, land) abutting the streets in which the mains should be laid, upon a basis of the frontage of the respective lots, irrespective of value. Acting under this amendment, the water board laid a main, and the cost was assessed upon property belonging to the complainants. The act provides that:

"Whenever, in the judgment of said commissioners, it shall be necessary to lay and construct water pipes and

---

[1] Rehearing denied October 16, 1900.

mains in and through streets and alleys in which no water pipes and mains now are laid, it shall be the duty of said commissioners to declare by resolution that, in their opinion, such necessity exists, specifying in such resolution the streets or alleys through which it is proposed to extend or lay such pipes, and the size, material, and estimated cost thereof. Such resolution shall fix a time and place when said commissioners will hear any persons desiring to object to such proposed construction and extension of such water pipes and mains. Said commissioners shall cause notice to be published in one or more daily papers printed in the English language in said city, for at least five days prior to said time fixed for hearing said matter, that it is proposed to levy an assessment upon the land or lands abutting the street or alley through which it is proposed to lay and construct such pipes and mains, for the cost thereof. At the time fixed for such hearing, or at such time to which the same may be adjourned, such commissioners shall attend for the purpose of hearing and deciding upon objections thereto, and, if no sufficient cause to the contrary be shown, the said commissioners may cause the said water pipes and mains to be laid and constructed as set forth in said resolution, and an accurate account shall be kept of the cost thereof. When the work of laying and constructing such pipes and mains is fully completed and performed, the said commissioners shall report the completion thereof to the common council, and shall at the same time report the cost thereof. Upon receiving such report, it shall be the duty of the common council to cause the sum so reported to be assessed upon the lots abutting the street or alley through which said water pipes and mains have been laid, in proportion to the frontage of such lot or lots: *Provided*, that no lot shall be assessed on more than one front, and, where such pipes and mains are constructed across more than one front of a lot, only the shortest front shall be estimated in making the assessment: *And provided further*, that no lot or lots shall be assessed for a [larger] sum than its proportionate share for laying and constructing a pipe or main six inches in diameter, and that whenever it shall have been necessary, in the judgment of said commissioners, to lay and construct pipes and mains of a larger size than six inches in diameter through the whole or any part of such proposed extension, then said commissioners shall determine the cost and expense of laying and constructing pipes and mains six inches in diameter, and

such sum shall be reported to the common council for assessment in lieu of the actual cost of such larger pipes and mains.    Property already supplied with water shall not be assessed for water mains and pipes [hereafter] heretofore laid, nor shall property once assessed for water pipes and mains under this act be liable for any additional or further assessments therefor.    The sums so reported as aforesaid shall be levied and collected by the same officers that levy and collect assessments for the construction and building of lateral sewers, and in such manner as the common council may by ordinance prescribe." Act No. 477, Local Acts 1897, § 28.

It is admitted that the acts complained of in this case were done while a majority of the board consisted of members appointed by the council before the enactment of the amendment of 1897, and it appears to be conceded that, under the pre-existing statute, the board had not the power to impose any burden of construction upon citizens or property by assessment.    Counsel for the complainants contend that it was not within the power of the legislature to confer upon officers appointed before the passage of the act the power to lay pipe and impose an assessment upon abutting property, either directly or indirectly, by requiring the council to do so in conformity to the report of the water board.    The case of *Board of Park Com'rs* v. *Common Council of Detroit*, 28 Mich. 228 (15 Am. Rep. 202), is alleged to be conclusive of the question.    In that case a board had been provided for, with authority to make conditional contracts for lands suitable for a public park, subject to ratification by a meeting of the citizens. The law provided that, after ratification by the citizens, the council might issue bonds of the city to pay for the land.    Conditional contracts were made, and two meetings of the citizens were held, without result.    Subsequently an amendment was passed by which the then existing board was authorized to locate suitable lands, and report the same to the common council, with an estimate of the amount necessary to pay for the same, and it was provided that thereupon the council should provide money for the purpose.    It was said by the court:

"It will be seen from this that 'the board of park commissioners are to have discretionary and unrestricted power in the location of the park or boulevard, or both, and in determining the amount of debt the city shall incur for the purpose, within the limits prescribed by the act, and the only discretionary authority left with the council is that the act authorizes that body to determine the rate of interest on the bonds, not exceeding 7 per cent., the sums in which they shall be issued, and the time when they shall be payable, which shall be not less than 30 nor more than 50 years."

The authority of the legislature in matters pertaining to the regulation of the duties which the people of a locality owe to the Commonwealth at large was recognized, and the necessity of consulting them denied.   Upon the other hand, it was said that the legislature had no authority to compel them to submit to taxation in matters which apply merely to those necessities or conveniences adapted to the local conditions, and in which the State has no concern, as illustrations of which the furnishing of light and of water to the citizens are mentioned.   See *Bailey* v. *Mayor, etc., of New York*, 3 Hill, 531 (38 Am. Dec. 669).   It is unnecessary to repeat the arguments used in support of the decision, which may as well be read.   That case is decisive of this, unless we are to say that there should be a distinction drawn between a provision for waterworks and one for a public park, for which we see no sound reason.   While it was doubtless competent for the legislature to prescribe the board through which action might be taken to lay water mains, if it could confide the matter to such a board to be thereafter appointed to the exclusion of the common council,—a question which we are not called upon to decide,—it could not confer such power upon a board consisting of members previously appointed, at a time when its powers were less, and who were not selected with a view to the exercise of such powers.

We are of the opinion that the act was void, and the decree is affirmed, with costs.

The other Justices concurred.